IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION H-13-747 |
| v. | § | |
| | § | CIVIL ACTION H-16-2023 |
| JUANITA EVA VELASQUEZ | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Juanita Eva Velasquez, proceeding *pro se*, filed a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. (Docket Entry No. 147.) The Government filed a motion for summary judgment (Docket Entry No. 155), to which Defendant filed a response (Docket Entry No. 156).

Having reviewed the section 2255 motion, the Government's motion for summary judgment, the response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES the section 2255 motion for the reasons that follow.

*Background and Claims*

Defendant pleaded guilty pursuant to a written plea agreement to conspiracy to possess with intent to distribute over 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Docket Entry No. 69.) The Court sentenced her on June 30, 2015, to 262 months' imprisonment. (Docket Entries No. 119; 129, pp. 24–26). Defendant filed a direct appeal, but the Fifth Circuit Court of Appeals

dismissed the appeal pursuant to the waiver of appeal provision in the written plea agreement. (Docket Entry No. 142.)

Defendant raises the following grounds for habeas relief under section 2255:

1. Counsel was ineffective in failing to move for downward departure based on Defendant's assistance.

2. The Court denied Defendant due process by accepting her plea without supporting facts.

3. The Government committed prosecutorial misconduct by delaying sentencing and misleading Defendant into believing she was receiving a downward departure.

4. Defendant is entitled to relief under *Johnson v. United States* and *Welch v. United States* in light of an unconstitutional residual clause.

5. Defendant's sentence violates her protections against cruel and unusual punishment.

The Government argues that these claims are barred by the collateral review waiver provision in the written plea agreement and/or are without merit.

### *Legal Standards*

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not

constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney, and are provided a liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

*Written Waiver Provision*

In her written plea agreement executed and filed in this case, Defendant agreed to the following provisions:

> Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" the conviction and sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on

3

collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

(Docket Entry No. 69, pp. 5-6.)

During the plea hearing, the Court inquired into the voluntariness of Defendant's written plea agreement:

> THE COURT: Counsel, I understand that we do have a written plea agreement in this case?
>
> MR. JONES: Yes, Your Honor.
>
> THE COURT: All right. And this is being offered pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, correct?
>
> MR. JONES: Yes, Your Honor.
>
> THE COURT: All right. Mr. Jones, would you please summarize the essential terms of the plea agreement for the record.
>
> MR. JONES: Yes, Your Honor. In exchange for the defendant's plea of guilty to Count 1, as well as the appellate and collateral attack waivers contained in the plea agreement, the United States agrees to recommend at the time of sentencing, to dismiss any remaining counts of the indictment at the time of sentencing that are pending against the defendant and to recommend full acceptance of responsibility, the full three points should she continue to accept responsibility as contemplated by the Sentencing Guidelines. And it does carry –
>
> THE COURT: 5K?
>
> MR. JONES: – the potential for cooperation. That's not a term of the plea agreement.
>
> THE COURT: It's not?

MR. JONES: It's outlined as this is if you do want to cooperate and seek a reduction, these are the terms that you would need to comply with.

THE COURT: All right.

MR. JONES: But there's no up-front promise made.

THE COURT: Right. But a 5K is a possibility?

MR. JONES: Yes, sir

THE COURT: And waiver of appeal?

MR. JONES: Yes, sir. The waiver of appeal and collateral attack.

(Docket Entry No. 131, pp. 13-14.) The Court continued its inquiry:

THE COURT: Okay. [Defense counsel], is that your understanding of the terms of the plea agreement?

DEFENSE COUNSEL: It is, Judge.

THE COURT: All right. And you've gone over this written plea agreement with your client, correct?

DEFENSE COUNSEL: Yes, sir.

THE COURT: All right. And [Defendant], has [defense counsel] answered any questions that you have about this plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And is that your understanding of the term – what Mr. Jones outlined, is that your understanding of the terms of the agreement that you have with the government in this case?

THE DEFENDANT: Yes, sir.

*Id.*, p. 15. The Court further admonished Defendant that she was waiving her right to appeal or pursue collateral review in the plea agreement, to which she confirmed her understanding. *Id.*, p. 18.

On direct appeal, the Government moved to dismiss the appeal based on enforcement of Defendant's waiver of appeal in the plea agreement. *United States v. Velasquez*, Appeal No. 15-20380 (5th Cir.). Counsel on appeal filed a response under *Anders v. California*, 386 U.S. 738 (1967), stating that Defendant had waived her right to challenge the conviction and sentence by any post-conviction means, except as to ineffective assistance. The Fifth Circuit granted the Government's motion and dismissed the appeal.

In her response to the Government's pending motion for summary judgment, Defendant makes conclusory assertions that she did not understand the plea agreement waiver. Her assertions are unsupported in the record or by probative summary judgment evidence. To the contrary, and as shown above, Defendant clearly stated on the record at her plea hearing that she had reviewed the plea agreement with counsel and he had answered all of her questions. It is well established that "[s]olemn declarations in open court carry a strong presumption of verity," creating a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Moreover, by executing the written plea agreement, Defendant acknowledged that she had "read and carefully reviewed every part of this plea agreement with [her] attorney[,]" that she understood the agreement, and that she "voluntarily agree[d] to its terms." (Docket

Entry No. 69, p. 14). Defendant establishes no grounds upon which this Court may hold the plea agreement waiver unenforceable in this proceeding.

The Government requests enforcement of the collateral review waiver executed in the written plea agreement, and moves for dismissal of Defendant's habeas claims except as to those based in ineffective assistance of counsel. The Court finds that Defendant's section 2255 claims are waived by her valid written plea agreement and guilty plea, except as to her claims for ineffective assistance of counsel. Regardless, and as discussed below, Defendant's habeas claims have no merit.

## *Ineffective Assistance of Counsel*

Defendant argues that counsel was ineffective in failing to move for downward departure based on her assistance to the Government. Her claim is refuted by the record and the applicable law.

Section 5K.1.1 of the Sentencing Guidelines provides that "upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." By its plain language, U.S.S.G. § 5K1.1 only permits a downward departure from the guidelines "upon motion of the government." Therefore, it was within the sole discretion of the Government to determine whether or not a request for downward departure was warranted at sentencing. *See United States v. Price*, 95 F.3d 364, 367–368 (5th Cir. 1996) (noting that the government has 'a power, not a duty' to file such a motion). Neither the record nor Defendant establishes any promise by the

Government to request a downward departure, or that counsel's actions or failure to act resulted in Defendant's loss of a downward departure that she otherwise would have received.

Defendant establishes neither deficient performance nor actual prejudice under *Strickland*. The Government is entitled to summary judgment dismissal of this claim.

### *Johnson/Welch*

Defendant claims, without further explanation, that she is entitled to re-sentencing pursuant to *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), as made retroactive to cases on collateral review in *Welch v. United States*, ___ U.S. ___, 136 S. Ct. 1257,1265 (2016). As correctly argued by the Government, *Johnson* has no factual or legal application to Defendant's conviction or sentence.

In *Johnson*, the Supreme Court held that the residual clause definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally vague. 135 S. Ct. at 2563. ACCA imposes a mandatory minimum sentence of fifteen years in prison for defendants who are convicted of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1), and who have at least three prior convictions for a violent felony, a serious drug offense, or both. 18 U.S.C. § 924(e)(1). Defendant was not convicted under the ACCA and its provisions have no application to her case.

The Government is entitled to summary judgment dismissal of Defendant's claim, and the claim is dismissed with prejudice.

## Cruel and Unusual Punishment

Defendant next claims that her sentence constitutes cruel and unusual punishment in violation of her Eighth Amendment protections. She presents no legal or factual arguments supporting her conclusory assertion.

The Eighth Amendment forbids extreme sentences that are "grossly disproportionate" to the crime. Generally, a sentence that falls within an established statutory range does not violate the Eighth Amendment. The Fifth Circuit Court of Appeals has recognized that the Sentencing Guidelines are a "convincing objective indicator of proportionality." *United States v. Cardenas-Alvarez*, 987 F.2d 1129, 1134 (5th Cir. 1993). Moreover, the United States Supreme Court has held that lengthy sentences, even for first time offenders, do not violate the Eighth Amendment. *Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991) (holding a mandatory life sentence for a conviction for conspiracy to distribute 295 kilograms of cocaine with no prior felony convictions was not cruel and unusual punishment).

Defendant was sentenced to a 262-month term of imprisonment, which was at the low end of the calculated guideline range. Defendant has made no showing that the application of the guidelines to her qualifying conduct was "grossly disproportionate" to the crime of conviction, and no Eighth Amendment violation is established.

The Government is entitled to summary judgment dismissal of Defendant's claim, and the claim is dismissed with prejudice.

### *Prosecutorial Misconduct*

Defendant alleges that the Government committed prosecutorial misconduct by delaying sentencing and misleading her into believing she was receiving a downward departure. She presents no argument or factual allegations in support of this claim, nor is the claim supported by probative summary judgment evidence. No prosecutorial misconduct is established.

The Government is entitled to summary judgment dismissal of Defendant's claim, and the claim is dismissed with prejudice.

### *Insufficient Evidence to Support Guilty Plea*

Defendant argues that the trial court erred in accepting her guilty plea without supporting facts. Her argument is refuted by the record.

The plea hearing record reflects the following proffer of underlying facts by the Government prior to the Court's acceptance of the plea:

> MR. JONES: Thank you, Your Honor. Sometime between on or about January 1st, 2011, continuing until on or about June 22nd, 2012, at or near the Laredo and Houston, Texas, areas and other locations within the jurisdiction of this Court, the [Defendant] knowingly and intentionally conspired and agreed with other persons to possess with intent to distribute a controlled substance. The offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, which is a Schedule II controlled substance.
>
> And the defendant did a variety of things to commit this offense, including possessing and transporting methamphetamine in the Laredo and Houston, Texas, areas and/or helping others do those types of illegal activities. Again, the amount of methamphetamine that she was involved in regarding this activity was at least 500 grams – I should say a mixture or substance containing methamphetamine was at least 500 grams.

The essentials of why she is here today are that on June 22nd, 2012, her codefendant, Larry Maurice Favorite, who is also her son, drove a Honda minivan east from Laredo, Texas, to the United States Border Patrol immigration checkpoint on Highway 59, about 16 miles west of Freer, Texas. The [Defendant] was riding as a passenger in the front seat of the van. A law enforcement dog alerted to the van for the possible presence of drugs in primary inspection. So the agents sent the van and the defendant and her son to secondary inspection. They searched the van, ultimately found what ended up being nine bottles of some type of brownish liquid inside that looked to be a little thicker than water. They ultimately field tested these bottles, and they field tested positive for methamphetamine.

And they asked the – at that time they took the defendant and her son into custody, and they asked them about, you know, what was in the bottles and what they knew, after advising them of their *Miranda* rights. The defendant waived her rights, said she understood them, agreed to talk to the agents. And she stated at first that she didn't know there were any drugs in the bottles, told agents the story that they only contained mezcal. She was taking them to Houston, Texas. Agents said they didn't believe her, and then she changed her story and admitted that she had lied and that she was being paid $600 per bottle to take them to Houston and that she believed the bottles contained drugs, in part because of the amount of money she was getting paid to take them to Houston.

And the agents also asked her about her son, Mr. Favorite, being involved. And she said that he was involved, because he had also believed that drugs were in the bottles and that he had told her – made some statements, asking her about how much money she was getting paid.
And, again, the bottles field tested positive for methamphetamine. They were sent to a lab where that was confirmed. The weight of the liquid itself contained in the bottles was 8.966 kilograms. And it contained methamphetamine at a purity level of 48.4 percent, making the total amount of actual methamphetamine approximately 4.339 kilograms. And this methamphetamine had been imported from Mexico, Your Honor.

THE COURT: Thank you. [Defendant], you've heard the government's attorney summarize the facts that he believes the government could prove about you in this case. Are those facts true?

THE DEFENDANT: Yes, sir.

THE COURT: All right. The Court finds that there's a factual basis for the plea. Let me ask you at this time, what is your plea to the charge against you in Count 1 of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

(Docket Entry No. 131, pp. 21-23).

Following a one-day continuance, the plea hearing continued:

THE COURT: All right. So, [Defendant], let me ask you, your plea to Count 1 of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right. And are you making this plea of guilty freely and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: And after having been fully advised of all of your legal rights by your counsel; is that right?

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT: Has anyone forced you, threatened you, coerced you, or done any violence to you or any other person to get you to plead guilty in this case?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty because of any promise that's been made to you by anyone?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty to protect someone else?

THE DEFENDANT: No, sir. I'm not protecting nobody.

THE COURT: I'm sorry?

THE DEFENDANT: I'm not protecting nobody.

THE COURT: All right. Are you pleading guilty because you are guilty and for no other reason?

THE DEFENDANT: Yes, sir.

THE COURT: All right. [Defense counsel], do you know of any reason why your client should not plead guilty to this charge?

DEFENSE COUNSEL: No, Your Honor.

THE COURT: Are you aware of any additional – any meritorious defenses that she would have to this count?

DEFENSE COUNSEL: No.

THE COURT: Any additional admonishments that you can think of that I need to provide to her at this time?

DEFENSE COUNSEL: Not at this time, Judge.

THE COURT: Mr. Jones?

MR. JONES: No, Your Honor. We're satisfied with the plea colloquy.

THE COURT: All right. Thank you. These are the Court's findings: I find the defendant is clearly mentally competent and capable of entering an informed plea. I find the plea is supported by independent facts establishing all of the elements of the offense and that the defendant intended to do the acts she committed. I find the defendant's plea of guilty is voluntarily, freely, and knowingly made and that the defendant understands the nature of these proceedings and the consequences of her plea of guilty and that this is an informed plea.

(Docket Entry No. 132, pp. 3–5.)

Defendant stated on the record that the Government's factual statement was true, and this Court relied on the factual statement and Defendant's admissions in accepting her plea of guilty. Defendant presents no viable legal or factual argument or probative summary judgment evidence supporting her claim, and habeas relief is unwarranted.

The Government is entitled to summary judgment dismissal of Defendant's claim, and the claim is dismissed with prejudice.

### *Evidentiary Hearing*

An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because the motion, files, and records in this case conclusively show that Defendant is not entitled to habeas relief, no evidentiary hearing is necessary.

### *Conclusion*

The Government's motion for summary judgment (Docket Entry No. 155) is GRANTED. Defendant's motion for relief under section 2255 (Docket Entry No. 147) is DISMISSED. A certificate of appealability is DENIED.

The Clerk of Court is ORDERED TO ADMINISTRATIVELY CLOSE Defendant's ancillary civil case in C.A. No. H-16-2023 (S.D. Tex.).

Signed at Houston, Texas on April 4, 2019.

Gray H. Miller
Senior United States District Judge